UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER MICHAEL AMRHEIN
DERUCHIE,

        Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

18-CV-227
DECISION AND ORDER

---

On February 12, 2018, the plaintiff, Christopher Michael Amrhein Deruchie, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On October 24, 2018, Amrhein Deruchie moved for judgment on the pleadings, Docket Item 12; on February 5, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 17; and on February 26, 2019, Amrhein Deruchie replied, Docket Item 18.

For the reasons stated below, this Court grants Amrhein Deruchie's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.    PROCEDURAL HISTORY

On March 18, 2014, Amrhein Deruchie applied for Supplemental Security Income benefits. Docket Item 8 at 87. He claimed that he had been disabled since September

1, 1999, due to, among other things, depression, migraines, posttraumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD). *Id.*

On September 30, 2014, Amrhein Deruchie received notice that his application was denied because he was not disabled under the Act. *Id.* at 86. He requested a hearing before an administrative law judge ("ALJ"), *id.* at 103, which was held on September 30, 2016, *id.* at 43. The ALJ then issued a decision on November 25, 2016, confirming the finding that Amrhein Deruchie was not disabled. Docket Item 1-1. Amrhein Deruchie appealed the ALJ's decision, but his appeal was denied, and the decision then became final. Docket Item 8 at 5. On February 12, 2018, Amrhein Deruchie filed this action, asking this Court to review the ALJ's decision. Docket Item 1.

## II.   DISABILITY STANDARDS

Amhrein Deruchie was under the age of 18 when he applied for social security benefits. Docket Item 1-1 at 5. Before the ALJ issued her decision, however, Amrhein Deruchie turned 18. *Id.* Thus, the ALJ was required to evaluate both whether Amrhein Deruchie was disabled under section 1614(a)(3)(C) of the Act before reaching the age of 18 and whether Amrhein Deruchie was disabled under section 1614(a)(3)(A) of the Act beginning at age 18.

### A.   Children's Disability Standard

A child under 18 is disabled under section 1614(a)(3)(C)(i) of the Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." In denying Amrhein Deruchie's application for the time period before Amrhein

2

Deruchie reached age 18, the ALJ evaluated his claim under the Social Security Administration's three-step evaluation process to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a).

At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity ("SGA"), defined as work activity that is both substantial and gainful. *Id.* § 416.972. "Substantial work activity" involves significant physical or mental activities. *Id.* § 416.972(a). "Gainful work activity" is work usually done for pay or profit, whether or not profit is realized. *Id.* § 416.972(b). If the claimant is engaged in SGA, the claimant is not disabled regardless of medical condition, age, education, or work experience. *Id.* at § 416.924(b). If the claimant is not engaged in SGA, the ALJ proceeds to the next step. *Id.*

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." *Id.* at § 416.924(a). For a claimant under the age of 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of such abnormalities that causes no more than minimal functional limitations. *Id.* § 416.924(c). If the claimant does not have a severe impairment or combination of impairments, the claimant is not disabled. If the claimant has a severe impairment, the ALJ proceeds to the third step. *Id.* § 416.924(a).

At step three, the ALJ must determine whether the impairment or combination of impairments meets, medically equals, or functionally equals an impairment in the listings. *Id.* § 416.924(d). If the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of one in

3

the listings, and if such impairments have lasted or are expected to last for a continuous period of at least 12 months, then the claimant is disabled. *Id.* § 416.924(d). If not, then the claimant is not disabled. *Id.*

To determine whether impairments functionally equal one in the listings, the ALJ assesses the claimant's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1). That assessment compares how the child performs in each of these domains with the typical functioning of a child of the same age without impairment. *Id.* § 416.926a(b). A child's impairments are of listing-level severity if there are "marked" limitations in at least two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(d). In determining whether limitations are marked or extreme, the ALJ will consider functional limitations that result from all impairments, including impairments that have been deemed not severe, and their cumulative effects. *Id.* §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), and (e)(1)(i).

A marked limitation results when impairments "seriously interfere with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). A marked limitation is "more than moderate" but "less than extreme." *Id.* On a standardized test designed to measure abilities within a certain domain, a marked limitation means a score of at least two, but less than three, standard deviations below the mean and a level of day-to-day functioning consistent with that score. *Id.* § 416.926a(e)(2)(i), (iii). For example, in the domain of "health and well-being," a child is considered to have a marked limitation if he or she is frequently ill as a result of his or

4

her impairments or exhibits frequent worsening of symptoms resulting in medically-documented exacerbations. *Id.* § 416.926a(e)(2)(iv). "Frequent" means episodes that occur on average every four months and last two weeks or more, or that occur more often than three times a year but last less than two weeks, or that occur less often but are of overall equivalent severity. *Id.*

An extreme limitation, on the other hand, results when impairments "interfere[ ] very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). An extreme limitation is one that is "more than marked." *Id.* The ALJ will determine a limitation to be extreme when a comprehensive standardized test designed to measure functioning in a particular domain results in a score of three or more standard deviations below the mean and day-to-day functioning consistent with that score. *Id.* § 416.926a(e)(3)(iii). In the domain of health and well-being, for example, the ALJ will consider a child to have an extreme limitation if the child is frequently ill or if impairments frequently become exacerbated, resulting in medically documented symptoms significantly more than those of a marked limitation. *Id.* § 416.926a(e)(3)(iv).

### B. Adults' Disability Standard

The Social Security Administration has promulgated a five-step evaluation process for adult disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* § 404.1520(a)(4).

5

At step two, the ALJ decides whether the claimant is suffering from a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). If there is not a severe impairment or combination of impairments, the claimant is not disabled. *Id.* If there is a severe impairment or combination of impairments, the ALJ proceeds to step three. *Id.* § 404.1520(a)(4).

At step three, the ALJ determines whether a severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that there is no severe impairment or combination of impairments that meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See id.* § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. *Id.* § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. *Id.* § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. *Id.* §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987);

20 C.F.R. § 404.1520(a)(4)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## III. OPINION EVIDENCE

The following summarizes the opinion evidence most relevant to Amrhein Deruchie's claim. The ALJ considered the opinions of several sources, but two—Christine Ransom, Ph.D, a psychologist, and J. Meyer, M.D., a pediatrician—are of most significance to the claim of disability here.

### A. Christine Ransom, Ph.D., Psychologist

Dr. Ransom performed a consultative psychiatric evaluation of Amrhein Deruchie on September 8, 2014. Docket Item 8 at 546. Amrhein Deruchie reported that he had recently graduated from high school. *Id.* While in school, he had been "in special education due to emotional problems." *Id.* He previously had been psychiatrically hospitalized in 2012 and 2013. *Id.* Since October 2013, he was "being treated by a private psychiatrist and counselor . . . with medication and therapy for ADHD, mood disturbance, [PTSD,] and anxiety." *Id.* Amrhein Deruchie told Dr. Ransom that he was independent in his personal care, enjoyed a variety of hobbies and interests, got along well with his friends, and was able to follow instructions to complete tasks as requested at home and at school. *Id.* at 548. Amrhein Deruchie's mother attended the appointment with him and reported that his ADHD was "currently in good remission on medication." *Id.* at 546. She also reported that his mood disturbance and anxiety were significantly improved such that he was experiencing only mild symptoms. *Id.*

During the examination, Amrehin Deruchie "was cooperative and socially appropriate." *Id.* at 547. He displayed a "neutral" mood and "expressed a full range of affect appropriate to speech and thought content." *Id.* His "[t]hought processes were coherent and goal-directed." *Id.* And his attention, concentration, and immediate memory were "intact." *Id.* at 548.

Dr. Ransom diagnosed Amrhein Deruchie with mood disorder, PTSD, and social phobia, all of which she determined were "currently mild." *Id.* at 549. Dr. Ransom also diagnosed Amrhein Dercuchie with ADHD, which she found was "currently in remission on medication." *Id.* Finally, she noted that Amrhein Deruchie's relevant medical disorders included tic disorder and an arachnoid cyst. *Id.*

Dr. Ransom opined that Amrhein Deruchie

> will show mild difficulties attending to, following and understanding directions, complet[ing] age-appropriate tasks, adequately maintain[ing] appropriate social behavior, respond[ing] appropriately to changes in the environment, learn[ing] in accordance to cognitive functioning, ask[ing] questions and request[ing] assistance at an age appropriate manner, be[ing] aware of danger and tak[ing] needed precautions[,] and interact[ing] adequately with peers and adults.

*Id.* at 548. Ultimately, she concluded that Amrhein Deruchie had "mild psychiatric conditions which will not significantly interfere with [his] ability to function on a daily basis." *Id.*

### B. J. Meyer, M.D., Pediatrician

On September 29, 2014, Dr. Meyer, a non-examining state agency pediatrician, evaluated Amrhein Deruchie's current functioning. *Id.* at 94-96. Dr. Meyer's review was

8

based on the records available to the agency at that time, including treatment records, school records, and Dr. Ransom's evaluation. *Id.* at 88-90.

Dr. Meyer found the following severe impairments: 2960 – affective disorders; 3152 – learning disorder; 3460 – migraine; and 3140 – ADHD. *Id.* at 92. But Dr. Meyer found that none of these severe impairments met, medically equaled, or functionally equaled the listings. *Id.* More specifically, Dr. Meyer found less than marked limitations in the childhood function domains of acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; and health and well-being. *Id.* at 92-93. Dr. Meyer found no limitation in the domain of caring for yourself. *Id.* at 93.

## IV.  THE ALJ'S DECISION

In denying Amrhein Deruchie's application, the ALJ evaluated Amrhein Deruchie's claim under sections 1614(a)(3)(C) and 1614(a)(3)(A) of the Act. *See supra* Section II.

### A. Childhood Disability

The ALJ determined that Amrhein Deruchie was born on November 7, 1996, and therefore was school-aged when he filed his application on March 18, 2014. Docket Item 1-1 at 9. At step one, the ALJ found that Amrhein Deruchie had not engaged in substantial gainful activity since the application date. *Id.* At step two, the ALJ found that Amrhein Deruchie suffered from the following severe impairments: ADHD, migraine headaches, mood disorder, affective disorder, anxiety, PTSD, and social phobia. *Id.* at 10. Although the ALJ found these impairments to be severe, at step three, he determined that they did not meet or equal any of the Childhood Listings in 20

C.F.R. § Part 404, Subpart P, Appendix 1. Docket Item 1-1 at 10. Specifically, the ALJ determined that the severity of Amrhein Deruchie's impairments, considered singly and in combination, did not meet or equal the listings in sections 111.00 (Neurological) or 112.00 (Mental Disorders). *Id.*

In addressing Amrhein Deruchie's symptoms, the ALJ followed a two-step process to evaluate whether (1) there is an underlying medically determinable physical or mental impairment that could be expected to produce his symptoms, and (2) the intensity, persistence, and limiting effects of his symptoms interfere with his functioning. *Id.* As part of her analysis, the ALJ addressed Amrhein Deruchie's abilities in each of the six domains for determining functional equivalence to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Docket Item 1-1 at 12-17.

The ALJ found less than marked limitations in the domains of acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; and health and physical well-being. *Id.* at 13-16. She found no limitation in Amhrein Deruchie's ability to care for himself. *Id.* at 16.

In reaching her conclusions, the ALJ gave "great weight" to Dr. Meyer's opinion because Dr. Meyer is a "physician [with] extensive programmatic expertise and based the opinion on the medical record." *Id.* at 12. The ALJ likewise gave Dr. Ransom's opinion "significant weight as it is based on a personal evaluation of the claimant and is consistent with the claimant's improved functioning as of the application date." *Id.*

### B. Adult Disability

The ALJ also found that Amrhein Deruchie had not developed any new impairments since reaching the age of 18 on November 7, 2014. *Id.* at 17. Although Amrhein Deruchie continued to have severe impairments, the ALJ found that none of these impairments, singly or in combination, met or equaled a listed impairment. *Id.*

Specifically, the ALJ found that Amrhein Deruchie experienced only mild restrictions in the activities of daily living; moderate difficulties in "social functioning" and "concentration, persistence, or pace"; and no "episodes of decompensation." *Id.* at 17-18. With respect to the latter category, the ALJ noted that "[t]he claimant testified that he had to be hospitalized twice [in 2016], but the only records supplied are various informational forms, consents to release information and one discharge statement." *Id.* at 18. The ALJ further noted that that "[t]here are no records as to the claimant's condition upon admission or discharge and it appears that the claimant may have only been admitted for a day or two." *Id.*

The ALJ concluded that, since attaining the age of 18, Amhrein Deruchie has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine tasks, and simple work-related decisions, can tolerate minimal changes in work routines and processes, can have occasional interaction with supervisors, coworkers, and the public, cannot work in teams or in tandem, should avoid work environments with loud noise, unprotected heights and dangerous machinery.

*Id.* at 18-19.

In reaching this conclusion, the ALJ considered the testimony of Amhrein Deruchie's mother, who "resides with [him] and would be a good source of information

11

as to his functional abilities." *Id.* at 19. The ALJ did not fully credit her testimony, however, because "some of her statements (such as the claimant's need for reminders) are contradicted by other medical evidence, including [Dr. Ransom's] findings that the claimant's ADHD symptoms were in good remission." *Id.*

Finally, the ALJ determined that, based on Amrhein Deruchie's age and RFC, there are a significant number of jobs in the national economy that Amrhein Deruchie is able to perform. *Id.* at 20-21. Thus, the ALJ found that Amrhein Deruchie was not disabled under the Act. *Id.* at 21.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alteration in original) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability

creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

**I.     ALLEGATIONS**

Amrhein Deruchie objects to the ALJ's finding that his impairments do not prevent him from performing substantial gainful activity as an adult.[1] Docket Item 12-1 at 1. He specifically argues that the ALJ erred by failing to develop the record, relying on stale opinions, and improperly discounting his mother's testimony. *Id.* at 19-30. And he asks this Court to reverse the ALJ's decision or, in the alternative, to remand for further administrative proceedings. *Id.* at 1.

**II.    ANALYSIS**

In determining a plaintiff's RFC, the ALJ must evaluate every relevant medical opinion. 20 C.F.R. § 416.927(c). But "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (quoting SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). "'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Id.* (quoting 20 C.F.R. § 416.913(a)).

---

[1] Amrhein Deruchie does not appear to object to the ALJ's finding that he was not disabled under the childhood disability standard prior to reaching the age of 18.

13

The ALJ may consider the opinions of "other sources"—for example, nurse practitioners or chiropractors—but there is no obligation to assign weight or give deference to those sources. *Id.* Nevertheless, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6. "When there is conflicting evidence in the claimant's record, the consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an other source." *Keska v. Comm'r of Soc. Sec.*, No. 17-CV-1010, 2019 WL 453362, at *4 (W.D.N.Y. Feb. 5, 2019) (citing 20 C.F.R. § 404.1527(c)(4)).

An ALJ also has a duty to "develop a complete medical record before making a disability determination." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). An RFC assessment must be "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. 416.945(a)(1). And when there are gaps in the record, the ALJ is obliged to fill them. *Rosa*, 168 F.3d at 79.

Moreover, an ALJ should not rely on "stale" opinions—that is, opinions rendered before some significant development in the claimant's medical history. *See Jones v. Colvin*, No. 6:14-CV-06316 MAT, 2015 WL 4628972, at *4 (W.D.N.Y. Aug. 3, 2015) (finding RFC not supported by substantial evidence when the "physicians did not have before them approximately four years of Plaintiff's medical records, including records related to Plaintiff's second heart attack"); *Acevdeo v. Astrue*, No. 11 CIV. 8853 JMF JLC, 2012 WL 4377323, at *16 (S.D.N.Y. Sept. 4, 2012) ("Additionally troubling is the

14

weight the ALJ gave to the RFC assessment . . . rendered approximately 18 months before the hearing . . . ."), *report and recommendation adopted*, 2012 WL 4376296 (S.D.N.Y. Sep. 24, 2012); *Pierce v. Astrue*, No. 09-CV-813 GTS/VEB, 2010 WL 6184871, at *6 (N.D.N.Y. 2010) ("[G]iven . . . multiple indications that Plaintiff's condition may have worsened since August 2005, Dr. Scerpella's assessment did not provide an adequate basis for the ALJ's disability determination.").

Here, the ALJ strayed from these fundamental principles by failing to develop the record and by relying on stale opinions.

### A. Duty to Develop the Record

The Act provides that the Commissioner "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary" to determine whether the claimant is disabled. 42 U.S.C. § 423(d)(5)(B); *see also* 20 C.F.R. § 416.912(d)(1) ("Every reasonable effort means that we will make an initial request for evidence from your medical source . . . and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request . . . ."). "Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge at trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'" *Morgan v. Astrue*, 569 F.3d at 112 (alteration in original) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)); *see also Rosa*, 168 F.3d at 79 (explaining that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical

history 'even when the claimant is represented by counsel'" (quoting *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996))).

Here, the ALJ acknowledged that Amrhein Deruchie was hospitalized twice in 2016 but the only record evidence from those hospitalizations were "various informational forms, consents to release information and one discharge statement." Docket Item 1-1 at 18. In fact, there were "no records [provided] as to the claimant's condition upon admission or discharge." *Id.* Amrhein Deruchie argues that the ALJ erred in failing to attempt to obtain these records. This Court agrees.

The ALJ herself identified a gap in the record, but she apparently made no effort to fill that gap. *See Paluch v. Comm'r of Soc. Sec.*, No. 17-CV-1045, 2019 WL 2422421, at *4 (W.D.N.Y. June 10, 2019) (remanding where "ALJ herself determined explicitly that there was a deficiency in the record"); *cf. Rosa*, 168 F.3d at 79 n.5 (explaining that "where there are *no obvious gaps* in the administrative record, and where the ALJ already possesses a '*complete medical history*,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim" (emphasis added) (quoting *Perez,* 77 F.3d at 48)). Even worse, the record shows that Amhrein Deruchie's counsel twice asked for assistance in obtaining hospital records. *See* Docket Item 8 at 221 (June 2016 letter "requesting assistance from the court in obtaining all medication records from WCA Hospital[,] . . . Wyoming County Community Health System[,] . . . [and] St. Joseph's Hospital Mental Health"); 226 (September 2016 letter requesting assistance collecting medical records from Wyoming County Community Health System).

It is true, as the Commissioner observes, that Amrhein Deruchie subsequently submitted some records from each of the facilities identified in his counsel's letters. Docket Item 17-1 at 17. For example, Amrhein Deruchie submitted records from St. Joseph's Hospital on May 2, 2016. Docket Item 8 at 572-83. As the ALJ noted, however, those records were incomplete: they did not include any admission notes or treatment notes from Amrhein Deruchie's hospitalization at St. Joseph's, Docket Item 1-1 at 18—which appears to have lasted about a week, *see* Docket Item 8 at 572. Nor is there any indication that the ALJ made an effort to obtain the missing records.

The Commissioner also relies on the fact that Amrhein Deruchie's attorney told the ALJ at the September 30, 2016 hearing that there was no "additional evidence to be submitted." Docket Item 17-1 at 17-18; *see also* Docket Item 8 at 46. That response, however, did not obviate the ALJ's *independent duty* to develop the record. *See Morgan*, 569 F.3d at 112.

Moreover, the missing records might well have affected the ALJ's evaluation. Amrhein Deruchie had repeated hospitalizations in 2016 for attempted suicide and Lamictal overdose, including the week-long admission at St. Joseph's. *See* Docket Item 8 at 660. Yet the ALJ appears to have relied on the incorrect assumption that Amrhein Deruchie had "only been admitted for a day or two." Docket Item 1-1 at 18. And even if that were true, the ALJ still would have been obliged to seek those records.[2]

---

[2] The ALJ seems to have discounted those hospitalizations because Amhrein Deruchie "stated that his problems were due to some of his medications, which were discontinued." Docket Item 1-1 at 19. But a claimant's lay understanding of the reasons behind a drug overdose and attempted suicide cannot excuse an ALJ from seeking relevant medical records.

17

It is possible that the ALJ attempted to obtain the records at issue, but that certainly is not apparent from the record before the Court. Thus, the ALJ appears to have failed to fulfill her duty to make a reasonable effort to obtain the missing hospital records. Consequently, the Court will remand so that the ALJ either can make a reasonable effort to obtain the records, or, if she has already done so, can explain the steps taken to obtain the records.

### B. Stale Opinions

Amrhein Deruchie also argues that the ALJ erred in relying on "stale" medical opinions. Specifically, he argues that "there were significant changes that warrant obtaining updated functional assessments from consultative examiners or treating sources." Docket Item 12-1 at 24. Again, this Court agrees.

"For a medical opinion to be stale, not only must there be a significant period of time between the date of the opinion and the hearing date, there also must be subsequent treatment notes 'indicat[ing] a claimant's condition has deteriorated' over that period." *Ambrose-Lounsbury v. Saul*, No. 18-CV-240, 2019 WL 3859011, at *3 (W.D.N.Y. Aug. 16, 2019) (alteration in original) (quoting *Whitehurst v. Berryhill*, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *4-*5 (W.D.N.Y. Aug. 14, 2018)); *see also Davis v. Berryhill*, No. 6:16-CV-06815 (MAT), 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018) (finding medical opinions stale where "significant developments in Plaintiff's medical history had occurred since" the opinions were issued). Here, Dr. Ransom rendered her opinion in September 2014—more than two years before the ALJ's decision. That time gap alone would not be sufficient to render the opinion stale, s*ee Vazquez v. Saul*, No. 18-CV-242, 2019 WL 3859031, at *3 (W.D.N.Y. Aug. 16, 2019),

18

but in the interim, Amrhein Deruchie was hospitalized multiple times for attempted suicide and Lamictal overdose. Because Dr. Ransom's opinion does not take those significant developments in into account,[3] it was error for the ALJ to rely on Dr. Ransom's stale opinion in determining Amhrein Deruchie's RFC.[4]

### C. Amrhein Deruchie's Mother's Credibility

Finally, Amrhein Deruchie argues that the ALJ erred in failing to properly evaluate his mother's credibility. The ALJ's opinion stated that, "[a]lthough [Amrhein Deruchie's mother] resides with [him] and would be a good source of information as to his functional abilities, some of her statements . . . are contradicted by other medical evidence, including [Dr. Ransom's] findings that [Amrhein Deruchie's] ADHD symptoms were in good remission." Docket Item 1-1 at 19. The Commissioner argues that this was a sufficient explanation of the ALJ's partial rejection of the testimony by Amrhein Deruchie's mother.

If Dr. Ransom's opinion had been current, the Court would agree with the Commissioner. As explained above, however, the ALJ cannot rely on Dr. Ransom's stale opinion as the reason for rejecting the credibility of Amrhein Deruchie's mother. On remand, the ALJ therefore must reconsider whether to credit Amrehin Deruchie's

---

[3] Additionally, because Dr. Ransom evaluated Amhrein Deruchie prior to his eighteenth birthday, she opined on his functioning only under the childhood disability standards.

[4] It is not clear whether the ALJ also relied on Dr. Meyer's opinion in concluding that Amrhein Deruchie does not have a disability as an adult. To the extent the ALJ did rely on Dr. Meyer's opinion to support that conclusion, such reliance was also error. Like Dr. Ransom's opinion, Dr. Meyer's opinion was rendered in September 2014 and thus did not account for Amhrein Deruchie's hospitalizations in 2016.

19

mother's testimony.  If the ALJ chooses not to credit that testimony, the ALJ must give an explanation based on something more than Dr. Ransom's stale opinion.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and Amrhein Deruchie's motion for judgment on the pleadings, Docket Item 10, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     October 16, 2019
           Buffalo, New York


                                             *s/ Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE